STATE OF NEBRASKA, APPELLEE, V.
YANNICK K. YUMA, APPELLANT.
___ N.W.2d ___

Filed July 12, 2013.    No. S-12-258.

1. **Jurisdiction: Appeal and Error.** An appellate court determines jurisdictional questions that do not involve a factual dispute as a matter of law.
2. **Criminal Law: Sentences: Judgments.** In a criminal case, entry of judgment occurs with the imposition of a sentence.

Appeal from the District Court for Lancaster County: STEPHANIE F. STACY, Judge. Reversed and remanded for further proceedings.

Joshua W. Weir, of Dornan, Lustgarten & Troia, P.C., L.L.O., for appellant.

Jon Bruning, Attorney General, and James D. Smith for appellee.

HEAVICAN, C.J., WRIGHT, CONNOLLY, STEPHAN, McCORMACK, MILLER-LERMAN, and CASSEL, JJ.

STEPHAN, J.

Yannick K. Yuma pled no contest to two misdemeanors and was sentenced to two concurrent 1-year terms of imprisonment. Because of credit for time served, he was released from custody on the same day he was sentenced. He subsequently moved to withdraw his guilty pleas, claiming his defense attorney did not properly advise him of the immigration consequences of conviction at the time he entered his pleas. The district court for Lancaster County concluded that it lacked jurisdiction to consider Yuma's motion, because he had completed his sentences and had been released from custody. Based upon our recent decision in *State v. Gonzalez*,[1] we reverse, and remand for further proceedings.

## BACKGROUND

Yuma was born in Zaire in 1985. He was granted asylum and immigrated to the United States in 2001. In August 2009,

---

[1] *State v. Gonzalez*, 285 Neb. 940, 830 N.W.2d 504 (2013).

he was charged in the district court for Lancaster County with one count of strangulation, a Class IV felony, and one count of domestic assault in the first degree, a Class III felony. He entered pleas of not guilty on both counts.

In March 2010, the State filed an amended information pursuant to a plea agreement. It charged Yuma with one count of attempted strangulation and one count of domestic assault in the third degree, both Class I misdemeanors. Yuma pled no contest to both counts. Before accepting the pleas, the judge advised Yuma that "conviction of the offenses for which you have been charged may have the consequence of removal from the United States, or denial of naturalization pursuant to the laws of the United States." When asked if he understood the advisement, Yuma replied in the affirmative. On April 7, Yuma was sentenced to imprisonment for 1 year on each count, with the sentences to be served concurrently. He was given credit for 247 days served. Because of the credit, Yuma was released from custody the same day he was sentenced.

In September 2011, Yuma filed a petition for writ of error coram nobis. After an evidentiary hearing on his petition but before any ruling, he obtained leave of court to amend and filed a common-law motion to withdraw his pleas and vacate his convictions. Relying upon *Padilla v. Kentucky*,[2] he alleged he was denied effective assistance of counsel at the time of his pleas, because his lawyer never asked about his "citizenship/ immigration status" or "inform[ed] him of the deportation consequences of his . . . plea," despite the fact that "deportation is presumptively mandatory" for noncitizens convicted of domestic assault. Yuma alleged that he was currently facing deportation as a result of his convictions and that his counsel's ineffective assistance constituted a "'[m]anifest injustice,'" which entitled him to the relief he sought.

After conducting a second evidentiary hearing, the district court found that because Yuma was released from custody before seeking to withdraw his pleas, it was necessary to

[2] *Padilla v. Kentucky*, ___ U.S. ___, 130 S. Ct. 1473, 176 L. Ed. 2d 284 (2010).

consider the jurisdictional issue of "whether a common-law Motion to Withdraw Plea is available to a defendant whose sentence has been completed." The court examined our cases addressing the various means of collaterally attacking a plea-based conviction on the ground that the defendant was not informed or aware of immigration consequences and noted that we had not squarely addressed the jurisdictional issue presented in this case. The court concluded:

> While it is possible that, once the issue is squarely before it, the Nebraska Supreme Court may conclude that having served one's sentence is a distinction which should not make a difference in the context of a common-law Motion to Withdraw Plea, that sort of evolution in the law is properly left to the appellate courts.

The court therefore denied the motion for the reason that it lacked jurisdiction. Yuma perfected this timely appeal.

## ASSIGNMENT OF ERROR

Yuma contends, restated, that the district court erred in concluding that it lacked jurisdiction to consider his common-law motion to withdraw his pleas and vacate his convictions.

## STANDARD OF REVIEW

[1] An appellate court determines jurisdictional questions that do not involve a factual dispute as a matter of law.[3]

## ANALYSIS

As we recently noted in *Gonzalez*,[4] a defendant seeking to withdraw a plea of guilty or nolo contendere after his or her conviction has become final has two potential statutory remedies. The first is Neb. Rev. Stat. § 29-1819.02 (Reissue 2008), which allows a defendant to move to withdraw a plea and vacate a conviction when the statutorily required advisement has not been given and an immigration consequence results from the conviction. The second is the Nebraska

---

[3] *State v. Gonzalez, supra* note 1; *Sutton v. Killham*, 285 Neb. 1, 825 N.W.2d 188 (2013).

[4] *State v. Gonzalez, supra* note 1.

Postconviction Act,[5] under which a "prisoner in custody under sentence"[6] may seek to have a conviction vacated on the ground that it was obtained in violation of the prisoner's constitutional rights.[7] A motion for postconviction relief must be filed within 1 year of the triggering event.[8]

In *Gonzalez*, we also reaffirmed the existence of a third means of withdrawing a plea after a conviction has become final, and we clarified its scope and parameters. We held:

> [T]here is a Nebraska common-law procedure under which a defendant may move to withdraw a plea after his or her conviction has become final. This procedure is available only when (1) the [Nebraska Postconviction] Act is not, and never was, available as a means of asserting the ground or grounds justifying withdrawing the plea and (2) a constitutional right is at issue. In sum, this common-law procedure exists to safeguard a defendant's rights in the very rare circumstance where due process principles require a forum for the vindication of a constitutional right and no other forum is provided by Nebraska law.[9]

In this case, Yuma was given the advisement required by § 29-1819.02. He has not sought to withdraw his plea pursuant to that statute, and has no grounds to do so. Nor has Yuma sought relief under the Nebraska Postconviction Act. Instead, he relies solely upon the common-law procedure. To decide whether he is entitled to utilize that procedure, we must first determine whether relief under the Nebraska Postconviction Act is, or ever was, available to him.

We conclude that the Nebraska Postconviction Act is not, and never was, available to Yuma. He was sentenced on April 7, 2010, but was immediately released from custody because

---

[5] Neb. Rev. Stat. §§ 29-3001 to 29-3004 (Reissue 2008 & Cum. Supp. 2012).

[6] § 29-3001(1).

[7] § 29-3001. See, *State v. Sims*, 277 Neb. 192, 761 N.W.2d 527 (2009); *State v. Jim*, 275 Neb. 481, 747 N.W.2d 410 (2008).

[8] § 29-3001(4).

[9] *State v. Gonzalez, supra* note 1, 285 Neb. at 949-50, 830 N.W.2d at 511.

of his credit for time served. Because Yuma was never a "prisoner in custody under sentence," he never could have sought relief under the act.[10]

The remaining question is whether there is a constitutional right at issue. Yuma, relying on *Padilla*,[11] asserts his Sixth Amendment constitutional right to counsel is at issue. The U.S. Supreme Court has recognized that "'the right to counsel is the right to the effective assistance of counsel.'"[12] In *Padilla*, the Court stated:

> It is our responsibility under the Constitution to ensure that no criminal defendant—whether a citizen or not—is left to the "mercies of incompetent counsel." . . . To satisfy this responsibility, we now hold that counsel must inform her client whether his plea carries a risk of deportation. Our longstanding Sixth Amendment precedents, the seriousness of deportation as a consequence of a criminal plea, and the concomitant impact of deportation on families living lawfully in this country demand no less.[13]

The Court concluded Padilla's allegation that his trial counsel failed to advise him that his guilty plea could lead to deportation was sufficient to state a claim of "constitutional deficiency."[14] Yuma's claim is similarly sufficient—if the holding in *Padilla* applies to this case.

In *Chaidez v. U.S.*,[15] the U.S. Supreme Court held that because *Padilla* announced a new rule within the meaning of *Teague v. Lane*,[16] those defendants whose convictions became

---

[10] See § 29-3001(1).

[11] *Padilla v. Kentucky, supra* note 2.

[12] *Strickland v. Washington*, 466 U.S. 668, 686, 104 S. Ct. 2052, 80 L. Ed. 2d 674 (1984) (quoting *McMann v. Richardson*, 397 U.S. 759, 90 S. Ct. 1441, 25 L. Ed. 2d 763 (1970)).

[13] *Padilla v. Kentucky, supra* note 2, 130 S. Ct. at 1486 (quoting *McMann v. Richardson, supra* note 12).

[14] *Id.*, 130 S. Ct. at 1483.

[15] *Chaidez v. U.S.*, ___ U.S. ___, 133 S. Ct. 1103, 185 L. Ed. 2d 149 (2013).

[16] *Teague v. Lane*, 489 U.S. 288, 109 S. Ct. 1060, 103 L. Ed. 2d 334 (1989).

final prior to *Padilla* could not benefit from its holding. But in *Griffith v. Kentucky*,[17] the Court held that "a new rule for the conduct of criminal prosecutions is to be applied retroactively to all cases, state or federal, pending on direct review or not yet final, with no exception for cases in which the new rule constitutes a 'clear break' with the past." Pursuant to *Griffith*, we applied newly announced constitutional rules to cases pending on direct appeal in *State v. Mata*[18] and *State v. Gales*.[19] Both of those cases were pending on direct appeal when the Court announced a new rule in *Ring v. Arizona*.[20]

[2] We conclude that the holding of *Padilla* is applicable to Yuma. Yuma entered his pleas on March 9, 2010, before *Padilla* was decided, but he was not sentenced until April 7, 2010, approximately 1 week after the *Padilla* decision. In a criminal case, entry of judgment occurs with the imposition of a sentence.[21] Thus, although Yuma's case was not pending on appeal when *Padilla* was decided, his convictions were not final at the time, and therefore, the new rule announced in *Padilla* applies to him.

In sum, the district court has jurisdiction to decide Yuma's common-law motion to withdraw his pleas, because the statutory remedy under § 29-1819.02 does not apply and the motion asserts a constitutional issue which was not, and never could have been, addressed under the Nebraska Postconviction Act. The fact that Yuma has served his sentences is not relevant to the jurisdictional analysis. On remand, the district court must determine whether Yuma's motion to withdraw is timely and whether he has established by clear and convincing evidence that withdrawal of his pleas is necessary to correct a manifest injustice.

---

[17] *Griffith v. Kentucky*, 479 U.S. 314, 328, 107 S. Ct. 708, 93 L. Ed. 2d 649 (1987).

[18] *State v. Mata*, 266 Neb. 668, 668 N.W.2d 448 (2003), *abrogated on other grounds, State v. Rogers*, 277 Neb. 37, 760 N.W.2d 35 (2009).

[19] *State v. Gales*, 265 Neb. 598, 658 N.W.2d 604 (2003).

[20] *Ring v. Arizona*, 536 U.S. 584, 122 S. Ct. 2428, 153 L. Ed. 2d 556 (2002).

[21] *State v. Lamb*, 280 Neb. 738, 789 N.W.2d 918 (2010).

CONCLUSION

For the reasons discussed, we reverse the judgment of the district court and remand the cause for further proceedings.

REVERSED AND REMANDED FOR
FURTHER PROCEEDINGS.

———————

IN RE INTEREST OF JUSTINE J. ET AL.,
CHILDREN UNDER 18 YEARS OF AGE.
STATE OF NEBRASKA, APPELLEE, V.
SHAWNA R., APPELLANT.
___ N.W.2d ___

Filed July 12, 2013.    No. S-12-1134.

1. **Juvenile Courts: Judgments: Appeal and Error.** Cases arising under the Nebraska Juvenile Code are reviewed de novo on the record, and an appellate court is required to reach a conclusion independent of the trial court's findings. However, when the evidence is in conflict, the appellate court will consider and give weight to the fact that the lower court observed the witnesses and accepted one version of the facts over the other.

2. **Juvenile Courts: Jurisdiction.** To obtain jurisdiction over a juvenile at the adjudication stage, the court's only concern is whether the conditions in which the juvenile presently finds himself or herself fit within the asserted subsection of Neb. Rev. Stat. § 43-247 (Reissue 2008).

3. **Juvenile Courts: Jurisdiction: Parental Rights.** Neb. Rev. Stat. § 43-247(3)(a) (Reissue 2008) outlines the basis for the juvenile court's jurisdiction and grants exclusive jurisdiction over any juvenile who lacks proper parental care by reason of the fault or habits of his or her parent, guardian, or custodian.

4. **Parental Rights.** The purpose of the adjudication phase is to protect the interests of the child.

5. **Juvenile Courts: Jurisdiction: Proof.** The Nebraska Juvenile Code does not require the separate juvenile court to wait until disaster has befallen a minor child before the court may acquire jurisdiction. While the State need not prove that the child has actually suffered physical harm, Nebraska case law is clear that at a minimum, the State must establish that without intervention, there is a definite risk of future harm.

6. **Parental Rights: Proof.** The State must prove the allegations in a petition for adjudication filed under Neb. Rev. Stat. § 43-247(3)(a) (Reissue 2008) by a preponderance of the evidence.

Appeal from the Separate Juvenile Court of Douglas County: ELIZABETH CRNKOVICH, Judge. Affirmed in part, and in part reversed and remanded with directions.