judgment against the tenant be granted. There was no evidence establishing that the landlord was liable to the injured party, who fell into an elevator car stationed "'about a foot'" below floor level.[44] We directed that the cause be remanded for further proceedings consistent with our opinion. Although the facts in *Kuhn* were considerably different, the same principle applies to the instant case. The focus has been on the *Tri-Par Investments* rule. The circumstances dictate that we likewise remand the cause for further proceedings consistent with this opinion.

### (d) Resolution

Under the circumstances of this case, we decline to direct entry of partial summary judgment in favor of SFI. Rather, we remand the cause for further proceedings.

### VI. CONCLUSION

The judgment of the district court granting Carroll's motion for summary judgment and dismissing SFI's complaint is reversed, and the cause is remanded to the district court for further proceedings consistent with this opinion.

Reversed and remanded for
further proceedings.

---

[44] *Id*. at 432, 771 N.W.2d at 110.

---

State of Nebraska, appellee, v.
Francisco C. Rodriguez, appellant.
___ N.W.2d ___

Filed August 1, 2014.    No. S-13-325.

1. **Jurisdiction: Appeal and Error.** Subject matter jurisdiction is a question of law for the court, which requires an appellate court to reach a conclusion independent of the lower court's decision.
2. **Statutes: Legislature: Intent: Appeal and Error.** In construing a statute, an appellate court's objective is to determine and give effect to the legislative intent of the enactment.

3. **Statutes: Appeal and Error.** An appellate court will not resort to interpretation to ascertain the meaning of statutory words which are plain, direct, and unambiguous.

4. \_\_\_\_: \_\_\_\_. It is not within an appellate court's province to read a meaning into a statute that is not there.

5. **Pleas: Judgments: Collateral Attack.** A motion to withdraw a plea is a collateral attack, because it seeks modification of a judgment in a manner other than by a proceeding in the original action.

6. **Statutes: Legislature: Presumptions.** The Legislature is presumed to know the general condition surrounding the subject matter of a legislative enactment, and it is presumed to know and contemplate the legal effect that accompanies the language it employs to make effective the legislation.

7. **Statutes: Legislature: Intent.** The intent of the Legislature may be found through its omission of words from a statute as well as its inclusion of words in a statute.

8. **Appeal and Error.** An appellate court is not obligated to engage in an analysis that is not necessary to adjudicate the case and controversy before it.

Appeal from the District Court for Sarpy County: David K. Arterburn, Judge. Reversed and remanded for further proceedings.

Bilal A. Khaleeq and Daniel S. Reeker, of Khaleeq Law Firm, L.L.C., for appellant.

Jon Bruning, Attorney General, and Nathan A. Liss for appellee.

Heavican, C.J., Wright, Connolly, Stephan, McCormack, Miller-Lerman, and Cassel, JJ.

Wright, J.

## NATURE OF CASE

In 2013, Francisco C. Rodriguez moved to withdraw his guilty plea and to vacate his 2004 conviction for attempted possession of a controlled substance, a Class I misdemeanor. He alleged that before entering a guilty plea in the 2004 proceedings, he did not receive the proper advisement under Neb. Rev. Stat. § 29-1819.02(1) (Reissue 2008), and that he currently faced immigration consequences from the resulting conviction.

Because Rodriguez moved to withdraw his plea after he had completed his sentence of 2 years' probation, the district

court concluded that it did not have subject matter jurisdiction. We conclude that the court did have jurisdiction, and we reverse the judgment and remand the cause for further proceedings.

## SCOPE OF REVIEW

[1] Subject matter jurisdiction is a question of law for the court, which requires an appellate court to reach a conclusion independent of the lower court's decision. *State v. Clark*, 278 Neb. 557, 772 N.W.2d 559 (2009).

## FACTS

In January 2004, Rodriguez was charged by information with possession of a controlled substance. As a result of a plea agreement, the charge was reduced to attempted possession of a controlled substance, a Class I misdemeanor under Neb. Rev. Stat. §§ 28-201(4)(e) (Cum. Supp. 2004) and 28-416(3) (Supp. 2003), and Rodriguez agreed to enter a plea of guilty.

On March 23, 2004, Rodriguez appeared before the district court and received the following advisement about the immigration consequences of a guilty plea:

> But in addition to that, if a plea . . . is entered to a felony, besides the maximum sentence, there are indirect consequences that will follow you the rest of your life. . . . If you are not a United States citizen, a plea of guilty may subject you — to a felony may subject you to deportation. There are any other number of those indirect consequences that may occur if you plead guilty to a felony.

After the advisement, Rodriguez entered a plea of guilty. The court accepted the plea, adjudged Rodriguez guilty, and sentenced him to 2 years' probation.

In February 2013, Rodriguez moved to withdraw his guilty plea and to vacate his conviction for attempted possession of a controlled substance. He alleged that he had not been properly advised of the immigration consequences of a guilty plea, as required by § 29-1819.02(1), and that he had "recently

discovered the immigration consequences of his plea when [i]mmigration authorities took him into custody." The record does not reflect that the State raised any affirmative defenses in answer to Rodriguez' motion.

The district court concluded it did not have jurisdiction, because Rodriguez filed his motion after his sentence had been completed. It distinguished the case at bar from *State v. Yos-Chiguil*, 278 Neb. 591, 772 N.W.2d 574 (2009), and instead relied upon *State v. Rodriguez-Torres*, 275 Neb. 363, 746 N.W.2d 686 (2008). The court explained:

[T]he Supreme Court in Yos-Chiguil did not overrule the holding of Rodriguez-Torres. The Court is, therefore, left with strong language from Rodriguez-Torres which states that Sec. 29-1819.02 "does not convey upon a court jurisdiction" to vacate a judgment or withdraw a plea "where a party has already completed his or her sentence." Therefore, the Court can only conclude that the language of Rodriguez-Torres controls the present case. Consequently, the Court must find that [Rodriguez'] motion fails and must be overruled for lack of jurisdiction. It appears to this Court that had the Supreme Court in Yos-Chiguil found that the language of the statute clearly authorized relief beyond the end of a defendant's sentence, it would have said so. The Court declined to do so. Therefore, while there is an apparent discrepancy between the two cases, this Court must follow the clear precedent that exists and leave it to the appellate courts to resolve the inconsistency.

Rodriguez timely appeals. We moved the case to our docket pursuant to our statutory authority to regulate the dockets of the appellate courts of this state and ordered oral argument. See, Neb. Rev. Stat. § 24-1106(3) (Reissue 2008); Neb. Ct. R. App. P. § 2-111(E)(5)(a) (rev. 2008).

ASSIGNMENT OF ERROR

Rodriguez assigns, restated, that the district court erred in dismissing for lack of jurisdiction his motion to withdraw his guilty plea and vacate his conviction.

## ANALYSIS

### JURISDICTION UNDER § 29-1819.02

Rodriguez argues that the district court had jurisdiction under § 29-1819.02 to consider the motion to withdraw his guilty plea and to vacate his conviction. We set forth the relevant provisions of § 29-1819.02:

> (1) Prior to acceptance of a plea of guilty . . . to any offense punishable as a crime under state law, except . . . infractions . . . the court shall administer the following advisement on the record to the defendant:
>
> IF YOU ARE NOT A UNITED STATES CITIZEN, YOU ARE HEREBY ADVISED THAT CONVICTION OF THE OFFENSE FOR WHICH YOU HAVE BEEN CHARGED MAY HAVE THE CONSEQUENCES OF REMOVAL FROM THE UNITED STATES, OR DENIAL OF NATURALIZATION PURSUANT TO THE LAWS OF THE UNITED STATES.
>
> (2) . . . If, on or after July 20, 2002, the court fails to advise the defendant as required by this section and the defendant shows that conviction of the offense to which the defendant pleaded guilty . . . may have the consequences for the defendant of removal from the United States, or denial of naturalization pursuant to the laws of the United States, the court, on the defendant's motion, shall vacate the judgment and permit the defendant to withdraw the plea of guilty . . . and enter a plea of not guilty. . . .
>
> (3) With respect to pleas accepted prior to July 20, 2002, it is not the intent of the Legislature that a court's failure to provide the advisement required by subsection (1) of this section should require the vacation of judgment and withdrawal of the plea or constitute grounds for finding a prior conviction invalid. Nothing in this section, however, shall be deemed to inhibit a court, in the sound exercise of its discretion, from vacating a judgment and permitting a defendant to withdraw a plea.

[2-4] The question is whether a court lacks jurisdiction to consider a motion filed pursuant to § 29-1819.02(2) if the

defendant completed his or her sentence prior to filing the motion. In interpreting § 29-1819.02(2), we are guided by the following principles of statutory interpretation. In construing a statute, our objective is to determine and give effect to the legislative intent of the enactment. *State v. Hernandez*, 283 Neb. 423, 809 N.W.2d 279 (2012). An appellate court will not resort to interpretation to ascertain the meaning of statutory words which are plain, direct, and unambiguous. *State v. Magallanes*, 284 Neb. 871, 824 N.W.2d 696 (2012), *cert. denied* ___ U.S. ___, 133 S. Ct. 2359, 185 L. Ed. 2d 1082 (2013). "[I]t is not within an appellate court's province to read a meaning into a statute that is not there." *State v. Nelson*, 276 Neb. 997, 1003, 759 N.W.2d 260, 266 (2009).

We addressed the application of § 29-1819.02(2) in *State v. Yos-Chiguil*, 278 Neb. 591, 772 N.W.2d 574 (2009). There, we considered the scope of the relief provided in that subsection and rejected the argument that the relief was available only on direct review. We explained that "there is no language in the statute which would support such a limited construction, and indeed, the language permitting the procedure to be initiated by motion would suggest otherwise." *Id.* at 596, 772 N.W.2d at 579. Because the defendant in *Yos-Chiguil* had not completed his sentence at the time he moved to withdraw his plea, we declined to address "whether the remedy created by that subsection would extend to a defendant who had completed his or her sentence." 278 Neb. at 597, 772 N.W.2d at 579.

The district court in the instant case concluded that if § 29-1819.02(2) authorized relief after completion of a sentence, we would have addressed this fact in *Yos-Chiguil*. But in *Yos-Chiguil*, we did not reach this issue, because it was not before us. Our failure to address whether jurisdiction existed after completion of a sentence did not mean that we decided the question in a manner that would be adverse to Rodriguez in the case at bar.

But now we are presented with the precise question whether the procedure in § 29-1819.02(2) may be utilized by a defendant who has completed his or her sentence. Rodriguez

had completed his sentence of probation when he moved to withdraw his plea and vacate his conviction. The immigration consequences of his guilty plea did not arise until several years after he had completed his sentence. Based on the fact that Rodriguez had completed his sentence and in reliance on *State v. Rodriguez-Torres*, 275 Neb. 363, 746 N.W.2d 686 (2008), the district court concluded it lacked jurisdiction under § 29-1819.02 to consider Rodriguez' motion. The State similarly argues that *Rodriguez-Torres* mandates a finding that jurisdiction under § 29-1819.02 is limited to motions filed before completion of a defendant's sentence. We disagree.

In *Rodriguez-Torres*, this court considered whether Daniel T. Rodriguez-Torres was allowed to bring a motion to withdraw his 1997 plea after his sentence was completed. We discussed whether § 29-1819.02 established a procedure by which he could withdraw his plea under those specific facts. We held that § 29-1819.02 failed to provide such a procedure and that there was "no legislatively authorized procedure" allowing Rodriguez-Torres to bring a motion to withdraw his plea, because it was entered and accepted before July 20, 2002. See *Rodriguez-Torres*, 275 Neb. at 368, 746 N.W.2d at 690. We concluded that as a result, the lower court lacked jurisdiction to address Rodriguez-Torres' motion.

The State relies upon *Rodriguez-Torres*, as did the district court, for the proposition that jurisdiction under § 29-1819.02 extends only to motions filed before a defendant has completed his or her sentence. This argument is based on our statement that

> [i]n § 29-1819.02, the Legislature gives a court discretion to vacate a judgment or withdraw a plea where a court has failed to provide the advisement required for pleas made on or after July 20, 2002. It does not, however, convey upon a court jurisdiction to do so where a party has already completed his or her sentence.

See *Rodriguez-Torres*, 275 Neb. at 367, 746 N.W.2d at 689.

This is not the first time that the State has argued, based solely on *Rodriguez-Torres*, that the relief provided in § 29-1819.02(2) must be limited. In *State v. Yos-Chiguil*,

278 Neb. 591, 772 N.W.2d 574 (2009), the State alleged that this same statement in *Rodriguez-Torres* supported a finding that the relief provided in § 29-1819.02(2) was available only on direct review. We rejected this argument, because it "overstate[d] our holding in *Rodriguez-Torres* and overlook[ed] a critical difference" between the facts in *Rodriguez-Torres* and in the case then before us. See *Yos-Chiguil*, 278 Neb. at 595, 772 N.W.2d at 578. In *Rodriguez-Torres*, the plea sought to be withdrawn was accepted in 1997, long before the enactment of § 29-1819.02. The same was not true of the plea sought to be withdrawn in *Yos-Chiguil*. Because of this distinction, we held that the discussion of jurisdiction in *Rodriguez-Torres* must be limited to pleas entered before July 20, 2002. See *Yos-Chiguil, supra*.

But our focus on the fact that Rodriguez-Torres had completed his sentence was dicta. As we will explain below, whether his sentence was completed was not crucial to our decision that the court lacked jurisdiction to consider the motion to withdraw his plea entered before July 20, 2002. And to the extent *Rodriguez-Torres* stated that § 29-1819.02 does not apply to a defendant who has already completed his or her sentence, we conclude such statement is inconsistent with the statutory language.

Section 29-1819.02(2) creates a statutory remedy for a court's failure to give the appropriate immigration advisement before accepting a plea of guilty. The Legislature, however, has limited this remedy to a defendant who seeks to withdraw a plea which was accepted on or after July 20, 2002. See *id*. As to such pleas, the plain language of § 29-1819.02(2) provides that where a defendant has shown that he or she did not receive the proper advisement and that he or she may face immigration consequences as a result of the plea, a court must permit withdrawal of the plea. Where these requirements are met, a court is required to grant relief. See *id*.

However, a defendant whose plea was accepted prior to July 20, 2002, is not entitled to this statutory relief. Section 29-1819.02(3) does not create a procedure for withdrawal of a plea accepted before July 20, 2002. Section 29-1819.02(3) is a statement of the Legislature's intent to impose a time-based

limitation on the pleas that may be withdrawn due to the lack of immigration advisement. "With respect to pleas accepted prior to July 20, 2002, it is not the intent of the Legislature that a court's failure to provide the advisement required . . . should require the vacation of judgment and withdrawal of the plea . . . ." § 29-1819.02(3). This language clearly establishes a legislative intent to limit this remedy to pleas accepted on or after July 20, 2002. For a defendant whose plea was accepted before July 20, 2002, the statute provides neither relief in the form of withdrawal of a plea entered without the proper immigration advisement nor a procedure for obtaining such relief. See § 29-1819.02(3).

[5] A court's jurisdiction under § 29-1819.02 to consider motions seeking the statutory relief provided therein is also limited to pleas accepted on or after July 20, 2002. When a collateral attack is not raised in a recognized proceeding, a district court lacks jurisdiction over the claim. See *State v. Dunster*, 270 Neb. 773, 707 N.W.2d 412 (2005). A motion to withdraw a plea is a collateral attack, because it seeks modification of a judgment "in a manner other than by a proceeding in the original action." See *State v. Keen*, 272 Neb. 123, 127, 718 N.W.2d 494, 498 (2006). The only recognized procedure for seeking withdrawal of a plea under § 29-1819.02 is limited to pleas accepted on or after July 20, 2002. See § 29-1819.02(2).

Given this limitation, whether Rodriguez-Torres had completed his sentence was not relevant to our decision that we lacked jurisdiction. Even if Rodriguez-Torres had moved to withdraw his plea before completing his sentence, the court would have lacked jurisdiction over his motion filed pursuant to § 29-1819.02 and could not have granted him any relief under the statute. Therefore, our statement in *State v. Rodriguez-Torres*, 275 Neb. 363, 746 N.W.2d 686 (2008), that a court's jurisdiction to withdraw a plea under § 29-1819.02 is limited to a defendant whose sentence has not been completed was dicta.

Unlike the situation in *Rodriguez-Torres*, the plea sought to be withdrawn in the instant case was accepted after July 20, 2002, and the district court was not deprived of jurisdiction

based on the date of the plea. Therefore, it is now necessary for us to determine whether a court lacks jurisdiction to consider a motion filed pursuant to § 29-1819.02(2) if the defendant completed his or her sentence prior to filing the motion. We conclude that it does not. To the extent that our statement in *Rodriguez-Torres* can be interpreted to limit the relief provided in § 29-1819.02(2) to a defendant whose sentence has not been completed, such interpretation is expressly disapproved.

We have previously held that all a defendant must show to withdraw a plea under § 29-1819.02 is (1) that the court failed to give all or part of the advisement and (2) that the defendant faces an immigration consequence which was not included in the advisement given. *State v. Medina-Liborio*, 285 Neb. 626, 829 N.W.2d 96 (2013). See, also, *State v. Mena-Rivera*, 280 Neb. 948, 791 N.W.2d 613 (2010). We have also rejected the argument that a defendant seeking to withdraw a plea pursuant to § 29-1819.02 is required to show prejudice, because "our case law 'has made clear that only two elements must be met before a defendant can withdraw his or her plea [pursuant to § 29-1819.02]; and prejudice is not one of them.'" *Medina-Liborio*, 285 Neb. at 630, 829 N.W.2d at 99, quoting *Mena-Rivera, supra* (alteration in original). For the same reasons, we now conclude that it is not a required element of § 29-1819.02(2) that a defendant file such motion before his or her sentence is completed.

Section 29-1819.02 imposes no requirement that a motion to withdraw a plea must be filed before a defendant completes his or her sentence. Statutory language is to be given its plain and ordinary meaning. And it is well established that it is not within the province of the courts to read a meaning into a statute that is not there or to read anything direct and plain out of a statute. *Medina-Liborio, supra*.

[6,7] Had the Legislature intended to limit the relief prescribed in § 29-1819.02(2) to those defendants who have not completed their sentences, it would have included such a limitation in the statute. We find it significant that the Legislature did not do so. "[T]he 'Legislature is presumed to know the general condition surrounding the subject matter

of the legislative enactment, and it is presumed to know and contemplate the legal effect that accompanies the language it employs to make effective the legislation.'" *In re Invol. Dissolution of Wiles Bros.*, 285 Neb. 920, 928, 830 N.W.2d 474, 481 (2013), quoting *State ex rel. Wagner v. Gilbane Bldg. Co.*, 276 Neb. 686, 757 N.W.2d 194 (2008). Furthermore, "the intent of the Legislature may be found through its omission of words from a statute as well as its inclusion of words in a statute." See *Lozier Corp. v. Douglas Cty. Bd. of Equal.*, 285 Neb. 705, 714, 829 N.W.2d 652, 660 (2013).

The lack of any requirement in § 29-1819.02 that a defendant must not have completed his or her sentence is in stark contrast to the requirements under the Nebraska Postconviction Act, Neb. Rev. Stat. §§ 29-3001 to 29-3004 (Reissue 2008 & Cum. Supp. 2012). Only "[a] prisoner in custody under sentence" may file a motion under its provisions. See § 29-3001(1). The fact that § 29-1819.02 does not include a similar requirement or use the term "prisoner" is indicative of the Legislature's intent.

Notably, Neb. Rev. Stat. § 29-1819.03 (Reissue 2008), the Legislature's statement of its intent in enacting § 29-1819.02, includes no language that would suggest the statutory relief was meant to be available only to a defendant whose sentence has not been completed. Because § 29-1819.03 pertains to the same subject matter as § 29-1819.02, the two statutes "should be conjunctively considered and construed to determine the intent of the Legislature." See *State v. Hernandez*, 283 Neb. 423, 427, 809 N.W.2d 279, 283 (2012).

As explained by the Legislature in § 29-1819.03, the problem sought to be remedied by § 29-1819.02 was a broad problem that existed "in many instances involving an individual who is not a citizen of the United States and who is charged with an offense punishable as a crime under state law." The Legislature created the immigration advisement as a specific remedy to this problem. See § 29-1819.03. The broad objective of the immigration advisement was "to promote fairness." See *id.* This objective would not be achieved by limiting the application of § 29-1819.02 to those defendants whose sentences

have not been completed and excluding those who had completed their sentences. Section 29-1819.02 was enacted to address immigration consequences that could arise subsequent to a plea of guilty regardless of whether the sentence imposed as a result of the plea has been completed.

The dissent determines that the plain language of § 29-1819.02(2) limits its application to those individuals whose sentences have not been completed, because the statute uses the word "defendant." But if the Legislature had meant to limit the relief in § 29-1819.02(2) to only those individuals still serving a sentence, it would have done so by a plain statement to that effect and not by inclusion of a single word that has no relationship to the completion of a sentence. As commonly understood, the term "defendant" refers to an individual "accused in a criminal proceeding" and does not indicate whether that person has completed his or her sentence. See Black's Law Dictionary 508 (10th ed. 2014). A more appropriate word to highlight whether or not an individual has served his or her sentence would have been "prisoner," which the Legislature did not use. We note that the Legislature did use "prisoner" in the Nebraska Postconviction Act. See § 29-3001(1).

Far from clearly indicating a limitation on relief, we interpret the term "defendant" in § 29-1819.02(2) as identifying to whom this subsection applies. Section 29-1819.02(2) does not make generic reference to "defendants" or "a defendant." It refers to "the defendant." See *id*. When used in such a context, "the" modifies "defendant" to indicate that it "refers to someone or something previously mentioned or clearly understood from the context or the situation." See Webster's Third New International Dictionary of the English Language, Unabridged 2368 (1993). As such, in § 29-1819.02(2), "the defendant" is a reference to a particular individual either "previously mentioned" in the statute or "clearly understood from the context" and not an allusion to the current status of being accused. There is only one person identifiable from the context of § 29-1819.02(2)—the one moving to vacate his or her plea in the criminal proceeding in which he or she was accused.

For purposes of that criminal proceeding, the individual who was accused is always "the defendant." Therefore, we do not agree that the Legislature's use of "defendant" demonstrates an intent to limit the application of § 29-1819.02(2).

We find nothing in § 29-1819.02 that requires a motion to withdraw to be brought prior to completion of a sentence. The only time-based limitation imposed by the statute is that the plea sought to be withdrawn must have been accepted on or after July 20, 2002. See § 29-1819.02(2). Thus, we conclude that as to pleas entered on or after July 20, 2002, § 29-1819.02 gives a court jurisdiction to consider a motion to withdraw such plea or vacate the judgment regardless of whether a defendant has completed his or her sentence. The district court erred in dismissing Rodriguez' motion for lack of jurisdiction.

### COMMON-LAW PROCEDURE

[8] Rodriguez argues that the district court had jurisdiction over his motion under the common-law procedure for withdrawing a plea, as set forth in *State v. Gonzalez*, 285 Neb. 940, 830 N.W.2d 504 (2013). Because we conclude that the court had jurisdiction to consider Rodriguez' motion under § 29-1819.02, we do not consider whether there was alternative jurisdiction under a common-law procedure for withdrawing a plea. An appellate court is not obligated to engage in an analysis that is not necessary to adjudicate the case and controversy before it. *Holdsworth v. Greenwood Farmers Co-op*, 286 Neb. 49, 835 N.W.2d 30 (2013).

### CONCLUSION

For the foregoing reasons, we reverse the judgment of the district court dismissing Rodriguez' motion and remand the cause for further proceedings.

REVERSED AND REMANDED FOR
FURTHER PROCEEDINGS.

CASSEL, J., concurring.

I write separately only to make plain an important matter inherent in the court's opinion. There is no excuse for failing to

administer the statutory advisement.[1] It takes only a moment. The wording is succinct. The statute specifies the precise language. Judges have no reason to improvise or summarize. The "cost" of timely giving advisements is miniscule compared to the "benefit" of avoiding plea withdrawals years after the resulting judgments have been fully executed. Judges should fully and timely comply with the statutory mandate. And the practicing bar should ensure that judges do so.

---

[1] See Neb. Rev. Stat. § 29-1819.02(1) (Reissue 2008).

Connolly, J., dissenting.

I disagree with the majority's conclusion that under Neb. Rev. Stat. § 29-1819.02 (Reissue 2008), a person who has served his sentence can obtain an order permitting him to withdraw a plea and plead not guilty. Regardless of when the person entered the plea of guilty or no contest, § 29-1819.02 does not provide a remedy after the sentence is served. At that point, it's over.

To recap the provisions of § 29-1819.02, subsection (1) sets out the immigration advisement that a trial court must give to defendants before accepting a plea of guilty or no contest. The advisement must inform a defendant that if he or she is not a U.S. citizen, a conviction for the charged offense could have the immigration consequence of removal from the country or denial of naturalization.

Subsection (2) provides a remedy for persons who entered an unadvised plea on or after July 20, 2002, if the person shows that he or she faces one of the unadvised immigration consequences.[1] In that circumstance, "the court, on the defendant's motion, shall vacate the judgment and permit the defendant to withdraw the plea of guilty or nolo contendere and enter a plea of not guilty."[2]

---

[1] See *State v. Yos-Chiguil*, 278 Neb. 591, 772 N.W.2d 574 (2009).

[2] § 29-1819.02(2).

Subsection (3) provides that this statutory remedy is unavailable for persons who entered a plea before July 20, 2002. But it also provides that "[n]othing in this section . . . shall be deemed to inhibit a court, in the sound exercise of its discretion, from vacating a judgment and permitting a defendant to withdraw a plea."[3]

The first case we decided under § 29-1819.02 was *State v. Rodriguez-Torres*.[4] I agree that we later clarified its holding, but I disagree that our statements were dicta. There, the movant entered his pleas before July 2002, but he had completely served his sentence. We quoted the language of subsection (3) and recognized that § 29-1819.02 gives a court discretion "to vacate a judgment or withdraw a plea."[5] But we held that neither § 29-1819.02 nor any other statute creates a procedure for vacating a judgment and withdrawing a plea after a person has already served a sentence for a criminal conviction. Later, in *State v. Yos-Chiguil*,[6] we clarified that *Rodriguez-Torres* is limited to subsection (3), for unadvised pleas entered before July 20, 2002. But we reaffirmed our holding in *Rodriguez-Torres*, as clarified, in *State v. Chiroy Osorio*.[7] So those statements are not dicta, even if they do not apply to persons who entered unadvised pleas on or after July 20, 2002.

In *Yos-Chiguil*, we also clarified that *Rodriguez-Torres* did not decide whether a common-law remedy exists to withdraw a plea after a person has already served a sentence, because the issue was not presented.[8] We rejected the State's argument that the remedy under § 29-1819.02(2) was not available because the Court of Appeals had dismissed the defendant's direct appeal. We stated that "it is the failure to give the required advisement *and* the occurrence of an immigration consequence of which the defendant was not advised which trigger the

---

[3] § 29-1819.02(3).

[4] *State v. Rodriguez-Torres*, 275 Neb. 363, 746 N.W.2d 686 (2008).

[5] *Id*. at 367, 746 N.W.2d at 689.

[6] *Yos-Chiguil, supra* note 1.

[7] *State v. Chiroy Osorio*, 286 Neb. 384, 837 N.W.2d 66 (2013).

[8] See *Yos-Chiguil, supra* note 1.

statutory remedy in § 29-1819.02(2)."[9] And by holding that the defendant could seek the remedy, we implicitly determined that § 29-1819.02(2) authorizes a collateral attack on a final judgment—at least for petitioners still serving a sentence.[10] But in *Yos-Chiguil*, we specifically declined to decide the issue presented here: "In this case, [the defendant] was serving his sentence at the time he filed his motion to withdraw his plea pursuant to § 29-1819.02(2). We therefore need not decide whether the remedy created by that subsection would extend to a defendant who had completed his or her sentence."[11]

In *State v. Gonzalez*,[12] we recognized a limited common-law remedy for collaterally attacking a final judgment and withdrawing a plea. But the trial court had given the immigration advisement to the petitioner, so she was not entitled to relief under § 29-1819.02(2). Moreover, she was still serving a sentence of probation when she filed her motion. So we were not presented with the issue whether the remedy under subsection (2) is available to a petitioner who did not receive the advisement but has served his or her sentence.

But the majority's conclusion that the remedy under § 29-1819.02(2) applies to a person who has served a sentence is contrary to the statute's plain language. To repeat, under § 29-1819.02(2), if a defendant shows that he or she entered an unadvised plea on or after July 20, 2002, and that he or she faces one of the unadvised immigration consequences, "the court, on the defendant's motion, shall vacate the judgment and permit the defendant to withdraw the plea of guilty or nolo contendere and enter a plea of not guilty." The statute unambiguously limits the procedure to a criminal "defendant."

---

[9] *Id*. at 596, 772 N.W.2d at 579. See, also, *State v. Medina-Liborio*, 285 Neb. 626, 829 N.W.2d 96 (2013) (citing *Yos-Chiguil, supra* note 1, and *State v. Mena-Rivera*, 280 Neb. 948, 791 N.W.2d 613 (2010)).

[10] But see *State v. Gonzalez*, 285 Neb. 940, 830 N.W.2d 504 (2013) (citing our decisions in *Yos-Chiguil, supra* note 1, and *State v. Kluge*, 198 Neb. 115, 251 N.W.2d 737 (1977), *disapproved on other grounds, State v. Minshall*, 227 Neb. 210, 416 N.W.2d 585 (1987)).

[11] *Yos-Chiguil, supra* note 1, 278 Neb. at 596-97, 772 N.W.2d at 579.

[12] See *Gonzalez, supra* note 10.

It is true that by permitting collateral attacks under § 29-1819.02(2), we have not strictly construed the term "defendant," and we have probably been generous in the statute's application. A person convicted of a crime under a final judgment is obviously no longer a "defendant" in the literal sense of being a person accused of a crime.[13] But our expanded use of the term to include incarcerated persons who are collaterally attacking a final judgment is consistent with the way that we have used the term "defendant" in postconviction cases to include those serving sentences. It is also consistent with the Legislature's intent to provide fairness to individuals who entered unadvised pleas.

But even under the most generous interpretation of the term "defendant," Rodriguez has served his time and is no longer a defendant. Moreover, the remedy under § 29-1819.02(2) has three conjunctive parts. If a movant proves a claim for relief, a court must (1) vacate the judgment, (2) permit the defendant to withdraw the plea of guilty or no contest, and (3) permit the defendant to enter a plea of not guilty. But how can a court permit a person to enter a plea of not guilty when he or she has already served his or her entire sentence? The underlying criminal proceeding is done. It's over. Obviously, double jeopardy prevents the State from recharging the person with a crime for which he or she has already been punished.[14] In contrast, the double jeopardy issue does not arise if the movant is still serving his or her sentence. Even if a conviction is challenged in a collateral attack, double jeopardy does not preclude a retrial if the defendant's conviction was set aside because of an error in the proceedings leading to the conviction.[15] But because the statute contemplates the availability of a new trial, it makes no sense to conclude that the Legislature intended the statutory remedy to apply to a person who has completely served his or her sentence.

---

[13] See Black's Law Dictionary 508 (10th ed. 2014).

[14] See, e.g., *State v. Huff*, 282 Neb. 78, 802 N.W.2d 77 (2011).

[15] See *United States v. Tateo*, 377 U.S. 463, 84 S. Ct. 1587, 12 L. Ed. 2d 448 (1964).

Nor do I believe the common-law remedy that we recognized in *Gonzalez*[16] is available here. There, we recognized a limited common-law procedure for collaterally attacking a final judgment and withdrawing a plea if two conditions are met:

> (1) [T]he [Nebraska Postconviction] Act is not, and never was, available as a means of asserting the ground or grounds justifying withdrawing the plea and (2) a constitutional right is at issue. In sum, this common-law procedure exists to safeguard a defendant's rights in the very rare circumstance where due process principles require a forum for the vindication of a constitutional right and no other forum is provided by Nebraska law.[17]

We have permitted a person who has served his sentence to seek relief under the common-law procedure.[18] But here, Rodriguez has not shown that a constitutional right is at stake. He claims that the court's incorrect advisement under § 29-1819.02(1) prevented him from knowingly, intelligently, and voluntarily waiving his rights (presumably, his trial rights). The State, however, correctly argues that we have stated a trial court's failure to warn a defendant of immigration consequences does not implicate a constitutional right.[19] Rodriguez cites no authority to support his bare assertion to the contrary. I conclude that because Rodriguez has no remedy available under § 29-1819.02(2) and has failed to show that a constitutional right is at stake under the common-law procedure, the judgment of the district court should be affirmed.

HEAVICAN, C.J., joins in this dissent.

---

[16] See *Gonzalez, supra* note 10.

[17] *Id*. at 949-50, 830 N.W.2d at 511. Accord *State v. Yuma*, 286 Neb. 244, 835 N.W.2d 679 (2013).

[18] See *Yuma, supra* note 17.

[19] See *State v. Yos-Chiguil*, 281 Neb. 618, 798 N.W.2d 832 (2011) (citing *Smith v. State*, 287 Ga. 391, 697 S.E.2d 177 (2010)). See, also, *Padilla v. Kentucky*, 559 U.S. 356, 130 S. Ct. 1473, 176 L. Ed. 2d 284 (2010).