State of Nebraska, appellee, v.
Malual Mamer, appellant.
___ N.W.2d ___

Filed September 19, 2014.    No. S-13-785.

1. **Motions to Dismiss: Rules of the Supreme Court: Pleadings: Appeal and Error.** A court's grant of a motion to dismiss for failure to state a claim under Neb. Ct. R. Pldg. § 6-1112(b)(6) is reviewed de novo, accepting all the allegations in the complaint as true and drawing all reasonable inferences in favor of the nonmoving party.
2. **Constitutional Law: Postconviction.** A manifest injustice common-law claim must be founded on a constitutional right that cannot and never could have been vindicated under the Nebraska Postconviction Act or by any other means.
3. **Effectiveness of Counsel: Proof.** To prevail on a claim of ineffective assistance of counsel, the defendant must show that counsel's performance was deficient and that this deficient performance actually prejudiced his or her defense.
4. **Effectiveness of Counsel: Pleas: Proof.** To show prejudice when the alleged ineffective assistance relates to the entry of a plea, the defendant must show that there is a reasonable probability that, but for counsel's errors, he or she would not have entered the plea and would have insisted on going to trial.
5. **Effectiveness of Counsel: Proof.** The factual predicate for a claim based on ineffective assistance of counsel includes facts suggesting both unreasonable performance and the resulting prejudice.
6. **Pleadings: Proof: Time.** The factual predicate for a claim concerns whether the important objective facts could reasonably have been discovered, not when the claimant should have discovered the legal significance of those facts.
7. **Due Process.** Due process of law may be said to be satisfied whenever an opportunity is offered to invoke the equal protection of the law by judicial proceedings appropriate for the purpose and adequate to secure the end and object sought to be attained.

Appeal from the District Court for Douglas County: W. Russell Bowie III, Judge. Affirmed.

Kevin Ruser, of University of Nebraska Civil Clinical Law Program, and Sarah Safarik, Senior Certified Law Student, for appellant.

Jon Bruning, Attorney General, and Nathan A. Liss for appellee.

Heavican, C.J., Wright, Connolly, Stephan, McCormack, Miller-Lerman, and Cassel, JJ.

McCormack, J.

## NATURE OF CASE

Malual Mamer appeals from the district court's dismissal of his motion to vacate his plea and set aside his conviction under the common-law remedy for "manifest injustice" set forth in *State v. Gonzalez*.[1] Such procedure is only available if the defendant was never able to seek relief through the Nebraska Postconviction Act, Neb. Rev. Stat. § 29-3001 et seq. (Reissue 2008 & Cum. Supp. 2012) or any other means. The district court determined that Mamer could have brought a postconviction action, but Mamer argues that postconviction relief was never available to him. Mamer alleges that he could not have reasonably discovered the factual predicate of his claim while incarcerated because he did not receive notice of the government's decision to deport him until after his release.

## BACKGROUND

On March 31, 2010, the U.S. Supreme Court decided *Padilla v. Kentucky*.[2] Subsequently, on February 9, 2011, Mamer was charged with first degree sexual assault, a Class II felony. On July 20, 2011, the State filed an amended information charging Mamer with attempted sexual assault in the first degree, a Class III felony. Mamer, represented by counsel, pled guilty to the reduced charge that same date. Before the court accepted Mamer's plea, Mamer was given the statutory advisement of Neb. Rev. Stat. § 29-1819.02 (Reissue 2008). The court stated: "Do you understand that if you are not a United States citizen, a conviction for this offense may have the consequences of removal from the United States, or denial of naturalization, pursuant to the laws of the United States?" Mamer responded that he did. On September 15, the court sentenced Mamer to 12 to 18 months' incarceration, with credit for 248 days served.

[1] *State v. Gonzalez*, 285 Neb. 940, 942, 830 N.W.2d 504, 507 (2013).

[2] *Padilla v. Kentucky*, 559 U.S. 356, 130 S. Ct. 1473, 176 L. Ed. 2d 284 (2010).

The parties agree that Mamer was incarcerated for approximately 3 weeks following his conviction, and the State does not dispute that Mamer was not represented by counsel during the time of his incarceration. Mamer was discharged on October 7, 2011.

On February 9, 2012, Mamer filed a motion to withdraw his plea and vacate the judgment. Mamer alleged that not allowing him to withdraw his plea would result in "manifest injustice."

The motion specifically alleged that Mamer is not a citizen of the United States and that his trial counsel did not inform him before entering his plea of guilty that under 8 U.S.C. § 1227(a)(2)(A)(iii) (2012), deportation is presumptively mandatory for a conviction of attempted first degree sexual assault. Mamer alleged that pursuant to *Padilla*,[3] the failure of trial counsel to advise him of these immigration consequences denied him his Sixth Amendment right to effective assistance of counsel. Mamer alleged that he entered the plea of guilty without knowing the presumptively mandatory deportation consequences of the conviction. He then alleged that a "decision to reject the plea bargain would have been rational" had he been properly advised of the immigration consequences of his plea. Mamer alleged that he was currently in removal proceedings as a result of his conviction for attempted first degree sexual assault, and the exhibit attached to the motion showed that a notice to appear was sent by the U.S. Department of Homeland Security to Mamer on October 7, 2011. Mamer generally alleged that trial counsel's performance was deficient and that Mamer was prejudiced by the deficient performance. Mamer did not allege why he could not have brought this *Padilla* claim in an earlier postconviction motion or through other means.

The court granted the State's motion to dismiss, which we find in this context was a motion to dismiss for failure to state a claim. The court noted that the claim under the "manifest injustice" procedure recognized in *Gonzalez*[4] is only stated

---

[3] *Id.*

[4] *State v. Gonzalez, supra* note 1.

when the Nebraska Postconviction Act is not, and never was, available as a means of asserting the ground or grounds justifying withdrawing the plea. Because *Padilla* was decided before Mamer's conviction and Mamer was thereafter in custody, the court concluded that the Nebraska Postconviction Act was available to Mamer, but that he failed to avail himself of it. Accordingly, the common-law procedure for withdrawing his plea was not available to Mamer.

Mamer appeals the dismissal of his motion to withdraw his plea and vacate the conviction under our common-law "manifest injustice" procedure.

## ASSIGNMENT OF ERROR

Mamer assigns that the district court erred in dismissing, without an evidentiary hearing, his motion to withdraw his plea and vacate the judgment.

## STANDARD OF REVIEW

[1] A court's grant of a motion to dismiss for failure to state a claim under Neb. Ct. R. Pldg. § 6-1112(b)(6) is reviewed de novo, accepting all the allegations in the complaint as true and drawing all reasonable inferences in favor of the nonmoving party.[5]

## ANALYSIS

[2] The district court dismissed without a hearing Mamer's motion for relief under a manifest injustice claim. The question presented is whether, accepting all the allegations in the motion as true, Mamer stated a manifest injustice common-law claim to set aside his former plea. In *State v. Gonzalez*, we set forth the scope and parameters of a manifest injustice claim.[6] A manifest injustice common-law claim must be founded on a constitutional right that cannot and never could have been vindicated under the Nebraska Postconviction Act or by any other means.[7] It is a limited claim created to provide

---

[5] *Washington v. Conley*, 273 Neb. 908, 734 N.W.2d 306 (2007).

[6] *State v. Gonzalez, supra* note 1.

[7] See, *id*.; *State v. Chiroy Osorio*, 286 Neb. 384, 837 N.W.2d 66 (2013).

due process in the "very rare circumstance" where there is no other forum for vindicating a constitutional right.[8]

## Constitutional Right

[3] Mamer alleged that his constitutional right to effective assistance of counsel was violated.[9] To prevail on a claim of ineffective assistance of counsel, the defendant must show that counsel's performance was deficient and that this deficient performance actually prejudiced his or her defense.[10]

[4] Mamer alleged that under *Padilla*, counsel's performance was deficient by failing to advise Mamer of the risk of the deportation consequences associated with his plea agreement.[11] The U.S. Supreme Court in *Padilla* did not address whether the plaintiff had demonstrated prejudice as a result of such an inadequate advisement. But we have said that to show prejudice when the alleged ineffective assistance relates to the entry of a plea, the defendant must show that there is a reasonable probability that, but for counsel's errors, he or she would not have entered the plea and would have insisted on going to trial.[12]

Although Mamer's assertions of prejudice were unartful, taken together, we find they sufficiently alleged prejudice for purposes of a motion to dismiss. To prevail against a motion to dismiss for failure to state a claim, a plaintiff must allege sufficient facts, accepted as true, to state a claim to relief that is plausible on its face.[13] In cases in which a plaintiff does not or cannot allege specific facts showing a necessary element, the factual allegations, taken as true, are nonetheless plausible if they suggest the existence of the element and raise a reasonable

---

[8] *State v. Gonzalez, supra* note 1, 285 Neb. at 950, 830 N.W.2d at 511.

[9] See *Strickland v. Washington*, 466 U.S. 668, 104 S. Ct. 2052, 80 L. Ed. 2d 674 (1984).

[10] See *State v. Dixon*, 286 Neb. 157, 835 N.W.2d 643 (2013).

[11] See *State v. Gonzalez, supra* note 1.

[12] *State v. Fester*, 287 Neb. 40, 840 N.W.2d 543 (2013).

[13] *Bruno v. Metropolitan Utilities Dist.*, 287 Neb. 551, 844 N.W.2d 50 (2012).

expectation that discovery will reveal evidence of the element or claim.[14]

### Cannot and Never Could Have Been Vindicated Under Nebraska Postconviction Act or By Any Other Means

Mamer did not, however, allege any facts suggesting that he could not have vindicated his ineffective assistance of counsel claim through other means. On that basis alone, the district court was correct in dismissing Mamer's motion. Even if Mamer had asked to amend the motion to make the assertions that now form the basis of the arguments made in this appeal, Mamer's motion would have been properly dismissed. In arguing that he could not have brought his ineffective assistance of counsel claim while incarcerated, Mamer fundamentally misunderstands what objective facts formed the factual predicate for his ineffective assistance of counsel claim.

In order to bring a postconviction action, a prisoner must be in custody under sentence and claiming a right to be released.[15] Unlike the situation recently addressed in *State v. Yuma*,[16] Mamer was in custody following the alleged ineffective assistance of counsel. And Mamer does not argue that the relatively limited time he was incarcerated was inadequate to vindicate his *Padilla* right if he had been aware of trial counsel's ineffective assistance during that time. Rather, Mamer argues he could not have vindicated his *Padilla* right in a postconviction action because he was no longer in custody by the time he was notified by the U.S. Department of Homeland Security of its intention to begin removal proceedings. Mamer argues in essence that his claim did not arise until after he was released from incarceration and knew of the immigration consequences of his plea—and thus knew that his trial counsel's performance was ineffective.

---

[14] *Id.*

[15] § 29-3001(1).

[16] *State v. Yuma*, 286 Neb. 244, 835 N.W.2d 679 (2013).

Mamer and the State agree that the Nebraska Postconviction Act's definition of when a postconviction action accrues for purposes of the act's 1-year period of limitation is the proper framework for the question of whether Mamer's postconviction action could have been brought while he was still in custody. While § 29-3001 is not directly controlling of our manifest injustice analysis, we see no reason not to adhere to the Legislature's framework for when a postconviction claim could have been brought.

Under § 29-3001(4), the 1-year limitation period shall run from the later of:

> (a) The date the judgment of conviction became final by the conclusion of a direct appeal or the expiration of the time for filing a direct appeal;
>
> (b) The date on which the factual predicate of the constitutional claim or claims alleged could have been discovered through the exercise of due diligence;
>
> (c) The date on which an impediment created by state action, in violation of the Constitution of the United States or the Constitution of Nebraska or any law of this state, is removed, if the prisoner was prevented from filing a verified motion by such state action;
>
> (d) The date on which a constitutional claim asserted was initially recognized by the Supreme Court of the United States or the Nebraska Supreme Court, if the newly recognized right has been made applicable retroactively to cases on postconviction collateral review; or
>
> (e) August 27, 2011.

The constitutional claim Mamer asserts was initially recognized by the U.S. Supreme Court before Mamer's plea. Thus, the subsection at issue is: "(b) The date on which the factual predicate of the constitutional claim or claims alleged could have been discovered through the exercise of due diligence."

Mamer views the factual predicate as including the actual commencement of removal proceedings, especially since he lacked representation while incarcerated to inform him of the presumptively mandatory deportation law. The State argues that even if the factual predicate of a *Padilla* claim includes knowledge of the possibility of deportation, pro se inmates

are held to the same standards as inmates represented by new counsel to exercise due diligence in discovering potential claims.[17] Especially when Mamer was advised by the district court that his plea could have immigration consequences, Mamer with due diligence could have discovered his *Padilla* claim while still incarcerated. We agree with the State.

[5] The court in *Hasan v. Galaza*[18] addressed similar factual predicate language in the context of a habeas action and said that the factual predicate for a claim based on ineffective assistance of counsel includes facts suggesting both unreasonable performance and the resulting prejudice.

[6] The court in *Owens v. Boyd*,[19] addressing the habeas statute, explained that the discovery through due diligence of the factual predicate for a claim concerns whether the important objective facts could reasonably have been discovered, not when the claimant should have discovered the legal significance of those facts. The court reasoned that if courts were to wait "until the prisoner has spent a few years in the institution's law library" before the limitations period began to run, there would be "no effective time limit."[20]

Although Mamer believes that our discovery rule should be pertinent to our inquiry and that it furthers his argument, such limitations period likewise begins when the *facts* underlying the claim could reasonably be discovered.[21] This is distinct from discovering that those facts are actionable.[22]

The question is thus whether, while incarcerated, Mamer in the exercise of due diligence could have discovered the important objective facts concerning both trial counsel's deficient conduct and the resulting prejudice. Mamer plainly knew at the time of trial counsel's representation what trial counsel did and did not advise him of. But Mamer allegedly did not

---

[17] See *State v. Sims*, 277 Neb. 192, 761 N.W.2d 527 (2009).

[18] *Hasan v. Galaza*, 254 F.3d 1150 (9th Cir. 2001).

[19] *Owens v. Boyd*, 235 F.3d 356 (7th Cir. 2001).

[20] *Id*. at 359.

[21] See § 29-3001(4)(b).

[22] *Franzen v. Deere and Co*., 377 N.W.2d 660 (Iowa 1985).

know of *Padilla*, nor did he know of the immigration law that governed his future deportation. If Mamer did not know of *Padilla* or of the deportation law, he would not have had actual knowledge that counsel's advice was deficient. Further, without knowing the deportation consequences that counsel should have informed him of, Mamer would not have known of the prejudice, i.e., whether he would not have entered the plea and would have insisted on going to trial.

We conclude that Mamer's unawareness of the *Padilla* opinion, which was decided before his plea, does not concern the factual predicate for his ineffective assistance of counsel claim. Such alleged ignorance of *Padilla* concerns only the legal significance of the relevant objective facts.

In contrast, the existence of the applicable deportation law was an objective fact inasmuch as counsel would not be deficient for failing to advise of law that did not exist.

What Mamer misunderstands is that the existence of the deportation law itself forms the factual predicate, not the immigration officials' execution of deportation law. For counsel is not required under *Padilla* to predict the future execution of existing law or whether the law will change; counsel's duty is to advise upon the existing law's stated terms. And the prejudice element of a claim to set aside a plea due to ineffective assistance of counsel relates directly to the decision to plead guilty, not to whether the defendant was ultimately deported as a result of that decision.

In the exercise of due diligence—either with or without new counsel—Mamer could have discovered the applicable deportation law while incarcerated. The parties agree that the court advised Mamer at sentencing, in accordance with § 29-1819.02: "Do you understand that if you are not a United States citizen, a conviction for this offense may have the consequences of removal from the United States, or denial of naturalization, pursuant to the laws of the United States?" The advisement, which Mamer acknowledged he understood, put Mamer on notice of potential deportation laws. With due diligence, Mamer could have discovered that law while incarcerated. Because pro se inmates are held to the same standards

as inmates represented by new counsel,[23] the fact that Mamer was not represented by counsel while incarcerated does not change this conclusion.

Mamer therefore is unable to demonstrate an essential element of his manifest injustice claim: that he had no other means to vindicate the constitutional right at issue. While incarcerated, Mamer knew what trial counsel advised him of and, with due diligence, he should have discovered that counsel's advice omitted important deportation consequences. Accordingly, in the exercise of due diligence, Mamer would have discovered his claim while incarcerated and could have vindicated his claim through a postconviction action.

[7] We find no merit to Mamer's argument that dismissal of his manifest injustice claim denies him due process of law. The very definition of a manifest injustice claim encompasses the minimum protections of due process. If a claimant does not satisfy the elements of manifest injustice, due process has not been violated. Due process of law may be said to be satisfied whenever an opportunity is offered to invoke the equal protection of the law by judicial proceedings appropriate for the purpose and adequate to secure the end and object sought to be attained.[24] Mamer had the opportunity to vindicate his *Padilla* claim through a postconviction action, but he failed to exercise due diligence in discovering that claim and in bringing a postconviction action while incarcerated.

## CONCLUSION

Because Mamer should have discovered and brought his *Padilla* claim while incarcerated, the court properly granted the State's motion to dismiss Mamer's claim for manifest injustice relief.

AFFIRMED.

---

[23] See *State v. Sims, supra* note 17.

[24] *State ex rel. Nebraska State Bar Assn. v. Jensen*, 171 Neb. 1, 105 N.W.2d 459 (1960).